IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02588-LTB-KLM

KENDRICK SAMUELS,

      Plaintiff,

v.

JOHN L. DAVIS,
PATRICIA BALDWIN,
KERRI BARONI,
RICHARD FISHER,
BRADLEY JOHNSON,
KERRY BYNES,
THOMAS C. FISHER, M.D.,
CHRISTINE STURGEON, N.P.,
VALERIE EGLEY, R.N.,
BETTY KASPAR, R.N.,
AMY KAMMERZELL, R.N.,
MEGGAN EGLINTON,
JEFFREY HANSEN, and
NANCY DAVIS,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants' **Motion to Dismiss** [#15][1] (the

"Motion").  Plaintiff filed a Response [#34] in opposition to the Motion, and Defendants filed

Replies [#47, #50].  The Motion [#15] was referred to the undersigned for recommendation.

[#28].  The Motion is ripe for resolution.  The Court has reviewed the Motion, the Response,

_____

[1]  "[#15]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#15] be **GRANTED**.

## I. Background

In the Amended Complaint, Plaintiff asserts one § 1983 claim against all Defendants for violation of his Eighth Amendment rights in connection with Defendants' alleged deliberate indifference to Plaintiff's medical needs. [#10] at 13.  He seeks compensatory and punitive damages.  *Id.* at 19.[2]

In November and December of 2012, Plaintiff was serving a prison sentence for a nonviolent crime at Buena Vista Correctional Complex ("BVCC"), a prison facility of the Colorado Department of Corrections ("CDOC").  *Id.* ¶ 25.  On November 2, 2012, while lifting weights in the facility's recreational room, Plaintiff jammed his hand in a pulley when the weight machine malfunctioned, fracturing and displacing the fifth metacarpal in his left hand. *Id.* ¶ 26.  He immediately communicated his injury to the recreational officer on duty, Defendant Kerry Bynes ("Bynes"), who instructed Plaintiff to submit a written request for medical attention, i.e, a medical kite.  *Id.* ¶ 27.  Defendant Bynes did not contact medical personnel or otherwise address the issue.  *Id.*

Following Defendant Bynes's guidance, Plaintiff submitted a medical kite, in which he described his hand as "broke," to BVCC health services that same evening.  *Id.* ¶ 30.  After receiving the kite, Defendant Amy Kammerzell ("Kammerzell"), the registered nurse who was responsible for processing Plaintiff's kite, categorized the acuity of Plaintiff's injury

---

[2]  The Court construes the allegations of the Amended Complaint in a light most favorable to Plaintiff, as it must.  *Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

as "routine." *Id.* Plaintiff was not permitted to see BVCC's physician, Defendant Thomas C. Fisher, M.D. ("T. Fisher"), until November 5, 2012, three days after breaking his hand. *Id.* ¶ 31. Plaintiff spent those three days suffering paralyzing pain in his hand, which soon migrated up his arm and to his upper back, neck, and shoulder regions. *Id.* ¶ 32. Plaintiff communicated this pain to several BVCC staff members, who ignored his cries of pain and pleas for medical care. *Id.* Plaintiff tried to cope by taking over-the-counter pain medication. *Id.* ¶ 35.

When Defendant T. Fisher examined Plaintiff's injured hand on November 5, 2012, he confirmed the break and noted the "considerable swelling" of Plaintiff's left hand. *Id.* He applied a splint to Plaintiff's hand and ordered an immediate x-ray. *Id.* On November 7, 2012, radiologist Michael J. McCollum, M.D., obtained X-rays of the hand, confirmed that a bone in his hand had indeed been fractured and also revealed palmar displacement of several metacarpal bones. *Id.* ¶ 36. The internal trauma revealed by the x-rays prompted Defendant T. Fisher, Defendant Valerie Egley, RN ("Egley"), and Defendant Kerri Baroni ("Baroni"), the Health Services Administrator for BVCC, to confer and determine that Plaintiff's hand required surgery. *Id.* ¶ 37.

While waiting for his surgery, Plaintiff received minimal pain medication and medical treatment. *Id.* ¶ 38. The pain in his hand continued to wander up his arm and into his upper back and neck area as the swelling in his fractured hand increased. *Id.* Over the next two days, the pain became so excruciating that Plaintiff's left arm allegedly lost all functionality and dangled lifelessly at his side. *Id.* ¶ 39. Plaintiff then submitted another medical kite, requesting a sling to assist him in keeping his arm elevated until he could receive surgery. *Id.* Defendant Egley fitted Plaintiff with a sling on November 9, 2012, and

listened to his concerns about the pain he continued to experience.  *Id.* ¶ 40.  Defendant Egley indicated in documentation that Plaintiff should receive no further medical examination or treatment until the following week.  *Id.*  Defendant T. Fisher reviewed Defendant Egley's actions and approved them on November 12, 2012.  *Id.*

Around November 15, 2012, Defendant Bradley Johnson ("Johnson"), a BVCC correctional supervisor, and Defendant Richard Fisher ("R. Fisher"), a BVCC officer and supervisor, became aware of Plaintiff's medical needs but took no action on his behalf.  *Id.* ¶¶ 12, 14, 41.  Plaintiff regularly updated Defendant R. Fisher on his injury's status and his continued need for corrective surgery.  *Id.*  In the following weeks, Dr. Charles Kessler ("Kessler"), Defendant Johnson, Defendant R. Fisher, Defendant T. Fisher, and Defendant Egley explicitly discussed the potential complication that the bones in Plaintiff's hand would heal and would have to be re-broken for surgery to be properly performed.  *Id.* ¶ 42.

On November 15, 2012, Plaintiff filed a grievance indicating that his "arm" had been broken for two weeks and needed surgery, and that if he did not receive surgery there was a significant danger that his hand would have to be re-broken in order to be treated.  *Id.* ¶ 43.  He submitted the grievance to Defendant Jeffrey Hansen ("Hansen"), a BVCC detention officer, who gave it to Defendant Nancy Davis ("N. Davis"), a BVCC grievance coordinator, and administrative officials, including Defendant Baroni, Defendant Patricia Baldwin ("Baldwin"), who was the Supervisor to the Health Services Administrator for CDOC, and Defendant John Davis ("J. Davis") who was the warden of BVCC.  *Id.* ¶¶ 9, 10, 15, 22, 43.  None of these Defendants took any timely action with respect to the grievance. *Id.*

Twenty-five days after the accident occurred, Plaintiff reached out to the office of his

-4-

surgeon, Dr. Kessler, to inquire when surgery was planned. *Id.* ¶ 44. Dr. Kessler informed Plaintiff that surgery had not been authorized by CDOC staff until earlier that day, November 27, 2014. *Id.* Plaintiff submitted a medical kite informing BVCC medical staff both of his surgery's authorization and continued pain despite taking over-the-counter medications. *Id.* ¶ 45. Plaintiff received surgery on his metacarpals on December 7, 2012. *Id.* ¶ 46. His hand had substantially healed between November 2 and December 7, 2012, and during surgery Dr. Kessler was forced to break Plaintiff's hand again and to insert a screw in an attempt to bind the bones together. *Id.* ¶ 47. This process caused Plaintiff great pain, "permanent deformity, significant scar tissue build-up in the metacarpals of his left hand, and permanent physical limitations." *Id.* ¶ 48. Since that surgery, Plaintiff has had to pursue extensive physical therapy, has had additional surgeries to attempt to fix his hand, routinely visits private physicians to address complications and problems with his hand, and faces the possibility of further surgeries due to the trauma which resulted when his healed metacarpal bones were broken a second time. *Id.* ¶ 49.

## II. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his]

claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III.  Analysis

As a preliminary matter, the Court notes that it "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility

for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.   *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances.   *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.   It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (internal quotation marks and citation omitted).   As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

Defendants seek qualified immunity with regard to all claims asserted against them.[3] *Motion* [#37] at 28-29.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity offers protection both from trial and the other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526

---

[3] Each Defendant is named only in his or her individual capacity.  *Am. Compl.* [#10] ¶¶ 9-22.

(1985). When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity defense. *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff argues that Defendants' alleged inaction and/or delay in taking action exacerbated his injury and constituted "deliberate indifference," thereby violating his rights pursuant to the Eighth Amendment. The Constitution does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). To sufficiently allege "deliberate indifference," a prisoner must allege that (1) he was deprived of a medical need that is objectively "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Assuming for the moment that Plaintiff has alleged an objectively sufficiently serious medical need, the Court turns to the subjective component of the test, for which "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Court examines whether Plaintiff sufficiently alleges that each Defendant was aware of Plaintiff's condition and whether her or his actions constituted "deliberate indifference" to Plaintiff's medical need. *Farmer*, 511 U.S. at 828. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835; *Hood v. Prisoner Health Servs., Inc.*, No. 05-3198, 180 F. App'x 21, 25 (10th Cir. 2006) (stating that negligent failure to provide medical care does not rise to "deliberate indifference to serious medical needs"). A prison official is not deliberately indifferent to an inmate's medical needs unless he "knows of [and] disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 828.

Thus, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim

of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Further, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview," *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107).

Additionally, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.'" *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *White v. Colorado*, 82 F.3d 364, 366-67 (10th Cir. 1996) (holding that delay in medical treatment does not constitute a constitutional violation unless it can be shown that the delay resulted in substantial harm); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2008) (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable").  Thus, where an inmate argues that delay rather than denial of treatment violated the Eighth Amendment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock*, 218 F.3d at 1211).

When evaluating the subjective prong of the deliberate indifference test, the Court considers whether Defendants intended a deprivation of medical care, i.e., acted with deliberate indifference to the harm that could result from a deprivation. *See Farmer*, 511 U.S. at 837. The subjective component also requires that the prison official disregard the specific risk of harm claimed by the prisoner, not just a general risk of harm. *Martinez v. Beggs*, 563 F.3d 1082, 1089-90 (10th Cir. 2009) (citing *Estate of Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (holding that plaintiffs were required to show defendants were deliberately indifferent to prisoner's specific risk of suicide, his ultimate cause of death, not merely the risks of intoxication)). An inmate's difference of opinion concerning the medical treatment that he receives does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). A "prisoner's right is to medical care–not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted). While a plaintiff's disagreement with the course of treatment employed by prison medical staff may "amount[ ] to a medical malpractice claim cognizable in state court . . . a medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. 95-3006, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (citations omitted).

In *Fleming v. Uphoff*, No. 99-8035, 2000 WL 374295 (10th Cir. 2000), the Tenth Circuit addressed circumstances similar to the present case. In *Fleming*, the plaintiff brought a § 1983 claim for deliberate indifference. The plaintiff alleged that the state defendants refused to allow him to keep a medical appointment at the Veterans Administration Center in Denver, and that the prison institution's contracted health care

service provider denied approval for medical tests requested by both Veterans Administration doctors and a private doctor. The district court dismissed the plaintiff's case for failure to state a claim, and the Tenth Circuit affirmed on the grounds that the "complaint alleged only a difference of opinion regarding the type and timing of medical treatment, which did not constitute actionable deliberate indifference." *Fleming*, 2000 WL 374295, at *2. The Tenth Circuit reiterated that "neither medical malpractice nor disagreement with medical judgment constitutes an Eight Amendment violation." *Id.* (citing *Estelle*, 429 U.S. at 106; *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). To show deliberate indifference in such a situation, an inmate "must show a deliberate refusal to provide medical attention, as opposed to a particular course of treatment." *Id.*

With this background in mind, the Court turns to the allegations made against each Defendant. Plaintiff alleges that he showed Defendant Bynes his injured hand and told him he thought it was broken. Defendant Bynes looked at the hand and told Plaintiff to submit a medical kite. The issue here is whether Defendant Bynes, a correctional officer, would know that Plaintiff's injury required immediate medical attention. *See Morris v. Rector*, No. 13-cv-01139-MJR, 2013 WL 6267527, at *3 (S.D. Ill. Dec. 3, 2013) (holding that a correctional officer was not deliberately indifferent, though possibly negligent, when inmate complained of elbow injury, which later was confirmed broken, and correctional officer informed him it was not the type of injury that required immediate emergency attention); *Vining v. Dep't of Corr.*, No. 12 Civ. 3267(JPO), 2013 WL 2036325, at *5 (S.D.N.Y. Apr. 5, 2013) (holding that law enforcement officers, "presented with Plaintiff's claim of a broken hand, would not have been expected to view this injury as of a sort that required immediate medical attention . . . unlike cases where a plaintiff was discovered unconscious on the

-12-

ground . . . or where a plaintiff was known to have ingested a dangerous amount of alcohol or drugs").  Even if, as Plaintiff argues, Defendant Bynes failed to follow a prison regulation requiring him to timely communicate reportable incidents to appropriate persons, *Am. Compl.* [#10] ¶¶ 27-29, the mere failure to adhere to an administrative regulation is insufficient to state a constitutional violation.  *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (stating that "a failure to adhere to administrative regulations does not equate to a constitutional violation") (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").  Rather, Plaintiff must demonstrate that Defendant Bynes knew of and disregarded an excessive risk to Plaintiff's health or safety.  *See Farmer*, 511 U.S. at 837.  Plaintiff's argument to the contrary notwithstanding, *Response* [#34] at 11-14, the Court finds that the allegations are insufficient to demonstrate that Defendant Bynes was deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant Kammerzell, the nurse who processed Plaintiff's initial medical kite and deemed it "routine," there is no indication that she was in a position to immediately examine Plaintiff.  Plaintiff injured his hand on a Friday and submitted his medical kite that evening.  *Am. Compl.* [#10] ¶¶ 26, 30.  Defendant Kammerzell scheduled Plaintiff for an appointment with a physician on Monday, November 5, 2012.  *Id.* ¶¶ 30-31.  There are no allegations that Plaintiff's medical kite was sufficient to put Defendant Kammerzell on notice that he was subject to substantial and immediate harm without treatment over the weekend.  *Vining*, 2013 WL 2036325, at *5; *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that, where inmate received medical treatment

-13-

for his injuries, but the medical practitioners allegedly misdiagnosed and failed to recognize the severity of his broken hand, the medical practitioners may have committed malpractice but did not show deliberate indifference).   The Court finds that the allegations are insufficient to demonstrate that Defendant Kammerzell was deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant Betty Kaspar ("Kaspar"), another nurse at BVCC, Plaintiff does not include her in his recitation of the underlying allegations, but in the Claim for Relief, he asserts the same allegations made against Defendant Kammerzell. *Am. Compl.* [#10] at ¶¶ 54-56.   For the reasons cited regarding the claim against Defendant Kammerzell, the Court finds that the allegations are insufficient to demonstrate that Defendant Kaspar was deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant T. Fisher, the physician who first examined Plaintiff on November 5, 2012, Plaintiff avers that Defendant T. Fisher applied a splint to Plaintiff's hand on that date and ordered x-rays, which were taken two days later. *Am. Compl.* [#10] ¶ 57.  Plaintiff further avers that Defendant T. Fisher arranged for Plaintiff to see a surgeon, Dr. Kessler.  *Id.* ¶¶ 42, 44.   Although Plaintiff complains that none of these treatments occurred quickly enough, the speed of treatment in non-life-threatening situations generally translates to negligence or medical malpractice, not deliberate indifference. *Vining*, 2013 WL 2036325, at *5; *Beaman*, 838 F. Supp. 2d at 110; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (stating that the incarcerated plaintiff received "a degree of medical treatment which would be envied by the majority of the adult population of this country which is not incarcerated").   The Court finds that the allegations are insufficient to demonstrate that Defendant T. Fisher was deliberately indifferent to a substantial risk of

serious harm.

With respect to Defendant Egley, the nurse who was present when Plaintiff had his x-rays taken on November 7, 2012, who fitted Plaintiff for a sling on Friday, November 9, 2012, and who scheduled Plaintiff for a follow-up appointment to occur on Monday, November 12, 2012, these are the kind of allegations that do not demonstrate deliberate indifference.   Rather, Defendant Egley acted to treat Plaintiff's injury, and to the extent that Plaintiff disagrees with the treatment she provided, this is not grounds for a claim of deliberate indifference. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires.  A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."); *Kirkland v. O'Brien*, No. 12-cv-2083-WJM-KLM, 2014 WL 1224564, at *5 (D. Colo. Mar. 25, 2014) (holding that a nurse who evaluated the incarcerated plaintiff, considered his complaints, and provided him with pain medication, ice packs, a wheelchair, and a future appointment with a doctor was not deliberately indifferent despite the fact that the plaintiff told her he believed his leg was broken); *Aho v. Hughes*, No. 3:03CV1552(SRU)(WIG), 2005 WL 2452573, at *7 (D. Conn. Sept. 30, 2005) (holding that the incarcerated plaintiff did not state a deliberate indifference claim against medical providers when his principal complaints were that he should have been sent to the hospital sooner, should have seen the doctor sooner, and should have had surgery on his broken hand); *Vining*, 2013 WL 2036325, at *5; *Beaman*, 838 F. Supp. 2d at 110; *Morris*, 2013 WL 6267527, at *3.   The Court finds that the allegations are insufficient to demonstrate that Defendant Egley was deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant Baroni, her only alleged involvement is that she was present at the November 7, 2012 meeting after Plaintiff's x-rays were taken, and she received a copy of Plaintiff's November 15, 2012 grievance.  However, merely receiving a copy of a grievance does not establish personal participation under § 1983 without further factual connection to the alleged violation of a constitutional right.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013) (stating that a claim for supervisory liability must include allegations demonstrating personal involvement, a causal connection to the constitutional violation, and a culpable state of mind).  With respect to her presence at the meeting where Plaintiff's x-rays were discussed, the alleged conduct at most shows negligence or a difference in opinion with respect to Plaintiff's course of treatment.  For example, in *Inman v. Stock*, 248 F. App'x 892, 895 (10th Cir. 2007):

> We will assume (without deciding) that a broken bone in Mr. Inman's hand is sufficiently serious to satisfy the objective inquiry.  However, we agree with the magistrate judge and the district court that Mr. Inman has not alleged any facts indicating that Ms. Stock and Dr. Bloor were deliberately indifferent to his injury. Ms. Stock examined Mr. Inman three days after his injury, ordered x-rays, and determined that no other medical intervention appeared necessary.  When his complaints persisted, she examined him for a second time five days later, again ordered x-rays, and prescribed medication.  She also arranged for him to be seen by an orthopedic surgeon when the x-rays revealed a fractured metacarpal bone, and she followed up with the orthopedic surgeon in order to continue providing Mr. Inman with appropriate care.  Even assuming Ms. Stock was negligent, the alleged negligence is not sufficient to state a valid § 1983 claim against her or her supervising physician, Dr. Bloor.

*See also Morris*, 2013 WL 6267527, at *3.  The Court finds that the allegations are insufficient to demonstrate that Defendant Baroni was deliberately indifferent to a substantial risk of serious harm.

-16-

With respect to Defendants R. Fisher and Johnson, two correctional officers at BVCC, Plaintiff alleges that they became aware of his condition on or about November 15, 2012.  He alleges that Defendant R. Fisher communicated Plaintiff's concerns to "BVCC staff, scheduling coordinators, and medical supervisors." *Am. Compl.* [#10] ¶ 60.  However, by this point, Plaintiff had already been seen multiple times by medical providers at the facility.  *Id.* ¶¶ 31, 35-36, 40.  For the reasons cited in connection with the claim against Defendant Bynes, who is also a correctional officer, the Court finds that the allegations are insufficient to demonstrate that Defendants R. Fisher and Johnson were deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant Hansen, the detention officer who accepted Plaintiff's November 15, 2012 grievance, and Defendant N. Davis, the grievance coordinator who received Plaintiff's grievance, there is no indication that either were involved in any of the circumstances that led to Plaintiff's filing of the grievance.  *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (dismissing a constitutional claim against prison official against whom there were no allegations that he personally participated in any of the deprivations causing the plaintiff to file the grievance in the first place).  Merely being involved in the grievance review procedure is inadequate to demonstrate personal participation in the alleged constitutional violation.  *Id.*; *Gallagher*, 587 F.3d at 1069.  The Court finds that the allegations are insufficient to demonstrate that Defendants Hansen and N. Davis were deliberately indifferent to a substantial risk of serious harm.

With respect to Defendant Baldwin, the Supervisor to the Health Services Administrator at BVCC, and Defendant J. Davis, the warden of BVCC, the only allegations are that they may have received notice that Plaintiff required surgery.  *Am. Compl.* [#10]

¶¶ 43, 65.  However, mere notice to a supervisory authority is insufficient to demonstrate personal participation in the alleged violation of a constitutional right.  *Schneider*, 717 F.3d at 767-69; *Gallagher*, 587 F.3d at 1069.  The Court finds that the allegations are insufficient to demonstrate that Defendants Baldwin and J. Davis were deliberately indifferent to a substantial risk of serious harm.

Defendant Christine Sturgeon ("Sturgeon") is a nurse who is not mentioned in Plaintiff's recitation of allegations.  She is briefly mentioned under the Claim for Relief as having signed a medical record created by the radiologist who x-rayed Plaintiff's hand on November 7, 2012.  *Am. Compl.* [#10] ¶ 62.  There are no other allegations with respect to her, and a signature on one medical document, without more, is insufficient to demonstrate that she was deliberately indifferent to Plaintiff's serious medical need.

Finally, Defendant Megan Eglinton ("Eglinton") is also not mentioned in Plaintiff's recitation of facts but is only referred to under the Claim for Relief.  *Am. Compl.* [#10] ¶¶ 60, 63-64.  She is allegedly a medical record technician who was responsible for "facilitating the review and transfer of medical records for inmates requiring adequate medical care . . . ."  *Id.* ¶ 21.  Plaintiff argues that she "failed to appropriately transmit appropriate medical records for [Plaintiff's] appointments, failed to communicate timely that authorization was needed and/or given, and failed to schedule [Plaintiff] for surgery, repeatedly . . . ."  *Id.* ¶ 64.  These conclusory statements, while possibly demonstrating negligence, fail to provide any support for the allegation that Defendant Eglinton was deliberately indifferent.  *Vining*, 2013 WL 2036325, at *5; *Beaman*, 838 F. Supp. 2d at 110; *Morris*, 2013 WL 6267527, at *3; *Aho*, 2005 WL 2452573, at *7.  The Court therefore finds that the allegations are insufficient to demonstrate that Defendant Eglinton was deliberately

indifferent to a substantial risk of serious harm.

Accordingly, based on the foregoing, the Court **recommends** that Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs be **dismissed with prejudice**.[4]  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice was appropriate where the plaintiff had not shown that he could have stated viable causes of action against the defendants if he had been granted another opportunity to amend).

## V.  Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#15] be **GRANTED** and that Plaintiff's Amended Complaint [#10] be **DISMISSED with prejudice**.  *See Sheldon*, 269 F.3d at 1207 n.5.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this

---

[4]  Because the Court finds that Plaintiff has failed to sufficiently allege a constitutional violation against any Defendant, the Court need not address the remaining part of the qualified immunity test.  *See, e.g., Perrian v. Coons*, No. 13-cv-02951-KLM, 2015 WL 1539022, at *18 (D. Colo. Mar. 31, 2015).

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 24, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge